See, we've got Mr. Stone up first and then Mr. Davis for that side. All right, Mr. Stone, you ready? Yes, your honor. All right, you're on. May it please the court. In his own words, Terry Bevill seeks to impose, quote, vicarious liability under section 1983 on Judge Jeffrey Fletcher, quote, without regard to who committed the particular act, end quote, of having him fired. Neither this Supreme Court's instructions permit Bevill to do so. The district court erred twice in refusing to dismiss Bevill's retaliatory termination claim against Judge Fletcher. First, Bevill fails to state a plausible claim against Judge Fletcher. Supreme Court precedents squarely forecloses Bevill's vicarious liability theory and Bevill fails to plead facts showing that Judge Fletcher personally acted to have him fired. Second, Bevill cannot overcome Fletcher's qualified immunity, as this court clearly established whether non-final decision makers, such as Judge Fletcher, would be liable for first-demember retaliation claims in 2018, and Fletman Bevill was fired in 2017. First, Bevill fails to state a plausible claim against Judge Fletcher. As Bevill admits in page 30 of his brief, his section 1983 conspiracy claim seeks to impose vicarious liability on Judge Fletcher. Iqbal squarely prohibits vicarious liability. Fletcher can only be held responsible for his own actions. Now, Bevill failed to plead a plausible claim against Judge Fletcher in at least three ways. First, Bevill fails to plead facts plausibly illustrating a conspiracy that Fletcher joined. As this court has explained, a conspiracy under section 1983 is an antecedent agreement for two or more individuals to get together and violate someone's constitutional rights. While Bevill points to a number of times and makes the naked accusation that Fletcher, Wheeler, and Kaslu conspired or simultaneously acted, at no point in his complaint does he come together and even make the legal assertion that the three got together for an antecedent agreement. Much less does he provide the kinds of facts that this court is required in cases like Jabari and in Morrow to actually illustrate, for example, the times and places of meetings that the three would have gotten together, the contents of those meetings, the contents of the agreement, or anything along these lines that would be required to at least state plausible facts and not legal conclusions of the existence of a conspiracy that Fletcher joined. Second, Bevill fails to plead facts plausibly showing that Judge Fletcher individually acted to try and get Terry Bevill fired. Now, in certain circumstances, he comes and says that Kaslu, Wheeler, and Fletcher simultaneously went to the mayor. This is page 37 of his complaint, I believe. No, not 37. This is in his complaint, however. Got together and had a conversation with Mayor Dobbs regarding budgets and so on, and that Mayor Dobbs was threatened that in the event that Bevill wasn't fired, resources would be redirected away from the City of Quitman and the Quitman Police Department. But at no point does he specifically allege that Judge Fletcher said anything whatsoever, much less does he actually provide the contents of such a threat as just a statement of X threatened Y is, again, an unadorned legal conclusion. More importantly, and this is the most critical failure, Bevill fails to plead facts plausibly showing that Judge Fletcher's actions, whatever they might have been, actually caused Bevill's firing. Now, this court has recently, as in Jones v. Mississippi Secretary of State, stated that Section 1983 claims require individual causation. So, not just individual action, but the tracing of individual action to individual causation for, for example, a Section 1983 First Amendment retaliation claim. The only place in his complaint is in paragraph 35 where he suggests individual causation. Now, Mr. Bevill's complaint plainly states and recalls a large portion of a memorandum for when Police Chief Kelly Cole explained the reasons for why Bevill was being fired. Recall that Bevill had intervened on his own motion into a criminal case on behalf of his friend seeking a venue transfer without seeking approval from his superiors and the Quinton Police Department and Police Chief Kelly Cole issued a memorandum stating that Bevill had violated two policies, one against helping individuals in the criminal justice system essentially escape the consequences for lawbreaking, and the second being bringing discredit on the peace officer profession. Those are the stated reasons for the firing. Now, Bevill comes out and makes the legal conclusion that those were a pretext, but provides only one place where he states any actual facts to try and indicate it was a pretext. It's in paragraph 35 of the complaint where, according to Bevill, Police Chief Cole later said to the Texas Workforce Commission that part of the reason that he was, that part of the reason Cole fired Bevill was a threat made by District Attorney Wheeler not to prosecute cases from Quitman. Now, a claim against DA Wheeler still fails for the several other, for the several other absences I've already mentioned, but at least this is a fact regarding causation. Unfortunately, that causation runs only to District Attorney Wheeler and only to the threat not to take cases from Quitman. There's no analogous statement anywhere in this, anywhere in this complaint regarding anything Judge Fletcher might have said or how that might have actually caused his firing. Each of these three bases is an independent reason for dismissing the retaliatory termination claim against Judge Fletcher. But even if this court put all three of them aside and just sort of overlooked all these failings, nonetheless, Bevill can't overcome Judge Fletcher's qualified immunity. This court in Sims versus City of Madisonville was particularly clear regarding what the question that had appeared before the Fifth Circuit multiple times before was and what it was settling. Namely, quote, whether a non-final decision maker, meaning someone other than you actually had the authority to fire an individual plaintiff, could be liable for First Amendment retaliation. This court used exactly that formulation several times and went back through a somewhat confused history of prior precedent before stating that a specific case jet controlled on ordinary principles of causation. Now, previous cases, previous cases have had that similar problem named that similar issue. The District Court erred by believing that Kinney versus Weaver, an en banc case from 2004, actually supplied the clearly established law. A couple of problems with this with this conclusion by the District Court, Your Honors. First of all, the author of Kinney, Judge King, was on the panel in Sims. And so that would be quite an oversight in the first place for the author of Kinney, who would have believed that that had clearly established the law, to simply forget about it altogether. Your summary is about to take up all your time. If you agree, don't you, that a conspiracy can be established by circumstantial evidence? I'd move past my opening, Your Honor. But yes, I do believe that, in fact, a conspiracy can be proved by circumstantial evidence. But that circumstantial evidence has to be evidence of an agreement, not merely of parallel action, as this court has pointed to Twombly, for example, in stating that an individual has to do something to nudge from coordinated action or parallel action over to an actual agreement. Why doesn't the allegation that the three defendants together approached Mayor Dobbs and pressured him to have the plaintiff fired, why is that not evidence of coordination? Well, Your Honor, two points. One, you actually have to show an agreement beforehand. So that would be requiring that allegation to do double work. First is showing actually the actual Section 193 violation, and then also the conspiracy, which I don't think is a fair reading or even a component. But second, aside from that, that doesn't actually attribute to any individual any prior agreement or any specific action. I mean, this is the difference between saying parallel action, the three got together, which each of them understandably would have had a reason to speak to Mayor Dobbs. After all, the city of Quitman had a police captain that intervened in his own motion to do a criminal case, and each of these three individuals were for public misconduct. I see my time has expired. Go ahead and finish, if you have a, you know, finish your thought, if you. Thank you. Thank you, Judge Stewart. Each of these individuals was obviously implicated by Terry Bevel's affidavit. So there's a reason that each of them would be involved in the first place. That doesn't require an antecedent agreement to explain why each of them would have had the motivation to have wanted to speak with Mayor Dobbs or to be involved in this matter. Well, they got together and went over there together, doesn't that, I mean, how far is it from the county state over to Quitman? That's not the record, Your Honor. I understand it's not very far. Quitman is relatively, is, I believe, one of the larger municipalities in Wood County. I'm happy to stipulate it couldn't have been very far, Your Honor, but I don't think three individuals traveling simultaneously to a meeting speaks to whether or not they plausibly made an antecedent agreement to do anything. Also, on the causation, he alleged that the mayor resisted firing the plaintiff and the police chief resisted firing the plaintiff when the mayor went to him, but he did succumb to that pressure. And also, the testimony before the Texas Work Commission supports the idea that the firing, the reason given for the firing was really a pretext. Well, Your Honor, recall this court's cases require individual causation and individual action. I agree that Paragraph 35 has a statement from Police Chief Cole to the Texas Workforce Commission stating that, in part, District Attorney Wheeler's statement that he would not take cases from Quitman County goes to causation. It doesn't go to individual action or conspiracy, mind you, and all three are needed. But that still does nothing for Judge Fletcher. Again, for purposes of getting over Paragraph 37 and Police Chief Cole's stated reasons for the firing, which were that no one argues were just invented for purposes of this litigation, that statement about pretext says nothing about Fletcher's actions and says nothing tying Fletcher to what Kelly Cole said was the reason for the firing, which is DA Wheeler's threat. Well, you've got the district judge who decides all the cases going over there with Fletcher and holding his hand while he says that. Well, Your Honor, respectfully, there is no statement, even being a bit cheeky, there's no statement saying that Judge Fletcher held his hand in the contents of that threat, which is to say in Paragraph 35 that they wouldn't take cases from Quitman. That's not within the power of a state district judge to choose. State district judges aren't like prosecutors. Yeah, I mean, he can settle a case or he can just not put a case on the docket. I mean, we know that a lot of things a judge can do to penalize somebody if he wants to. Certainly, Your Honor, and had Terry Bevel actually pleaded in Paragraph 35 that Kelly Cole said, one, District Attorney Wheeler said he wasn't going to take any cases, and two, Judge Fletcher said he was going to deliberately slow walk cases from Quitman or he wasn't going to put them on the docket or something within the power of the county administrative judge. If he had said that, I agree that would have gotten him closer to actually stating individual causation for Judge Fletcher. The problem is Terry Bevel doesn't plead anything like that in this complaint, Your Honor, and this court can't just insert that for him to cure his defect. All right. Anything more? Judge Oldham? Anything? All right. Thank you. All right. Appreciate it, Mr. Stone. You've preserved your rebuttal time. All right. We'll hear from Mr. Davis. Thank you very much, Your Honor. May it please the court, counsel. The first thing that I think is probably the most important aspect of this case is that the law was not clearly established at the time that this occurred. This happened in June of 2017, when the claims that are made the basis of this case actually occurred, and the law was not clearly established that any person decision maker could be liable for First Amendment retaliatory termination. That was not decided until Sims v. City of Madison. The Kenny V. Weaver case is the exact opposite. Every player in that Sims v. City of Madison. We believe that the law in this instance clearly was not clearly established at the time, and as a result of that, this entire case fails. Additionally, Your Honor, I would note that in this case, as to the conspiracy claims, plaintiff simply has not alleged facts sufficient to establish that the defendants made an agreement to commit an illegal act. They don't even get there, in my opinion, Your Honors, on even evidence that is cursory. They don't allege facts that are even sufficient under Morrow to establish any type of conspiratorial act. The only facts that they actually allege is a close professional and personal relationship between Kaslu, Wheeler, and Fletcher. They allege that the sheriff was upset over the escape and the corruption of one of his officers who was being prosecuted. The defendants attended an open meeting of city council, which is certainly within their right, and I would note that Clipman is the county seat and that the city hall is approximately, oh, 25 yards away from the county courthouse. Kaslu gave public comment at the open meeting, which is also perfectly within his right, and the defendants approaching city officials and saying that the actions of the police agencies could have an effect on those police agencies is certainly a matter of public concern and certainly within their right to do. Is it within their right to tell the mayor you need to get rid of this man? I don't believe that Sheriff Kaslu said anything to that effect. I don't believe that's been alleged as to Sheriff Kaslu. It's been alleged that the three men urged the mayor to fire him. They don't make any assertion. It's a vague assertion, and there's no assertion that if you're looking for individual causation, which is mandatory in this case, there is no actual individual assertion of causation. What about Article 33, where they allege that Kaslu, Fletcher, and Wheeler threatened to retaliate against the city of Clipman and its residents by withholding resources if Bebo was not fired? What is that? Your Honor, I don't believe that that gets anyone where they need to be. There has to have been an agreement in advance, and that agreement had to have been acted on, and it has to be by, at the time, a final decision maker under the clearly established law. So I think under the clearly established law at the time, prior to Sims, that all three actors are entitled to qualified immunity. Well, I don't quite understand why Kenney didn't decide this issue. I mean, in Kenney, you had the plaintiff was employed by basically the college, and he was running a training program because that was the plaintiff's employer, and customers of the employer were local police departments who put pressure on the college not to—put pressure on the local police departments not to give business to the training academy. So you've got a third party putting pressure on the decision maker that causes the business to fail and these guys to lose their job. Respectfully, Judge Davis, Kenney v. Weaver is a case that I was involved in, and in actuality, all of those sheriffs were on the board of the organization. That's not in the case, though. The case didn't rely on that. Well, Your Honor, I believe it is in the case that they helped establish East Texas Police Academy. They actually—they were the final decision makers about who attended the classes. They were the final decision makers in terms of whether or not they were going to use that establishment and that professor, and they made that final determination themselves. This is a different situation. They had control in that situation over who they would send to classes and who they wouldn't. In this situation, none of the three individuals that are sued, Judge Fletcher, Sheriff Caslew, or District Attorney Weaver, had any final say over who or who would not be terminated if anyone would be terminated relating to this incident. You're saying the local police departments who gave business to the academy were on the board? Yes. They were on the board. The sheriffs were on the board. They basically helped create the academy. The college? Yes, sir. They were on the board. So East Texas Police Academy is actually a—it's part of Kilgore Junior College, but it's kind of a freestanding entity, kind of on its own. But I think the major distinction, Your Honor, is the fact that they were the final decision makers about who would and who would not attend the classes. They made the determination they were not going to use East Texas Police Academy. This is a different situation, Your Honor. In this particular situation, the final decision maker about the employment of Mr. Beville is, without any question, the city. And then I think also, Your Honor, you have to look at the on a matter of public concern. What we have in this case is Mr. Beville, one of the highest ranking officers in the largest municipality in Wood County, who files an affidavit with the court in his capacity as the captain of the largest municipal police agency in the county and makes the statement for, admittedly, his best friend, that the sheriff and the judge and the D.A. are all corrupt and that this man is not going to get a fair trial and that the case should be moved. Now, is that a matter of private— Yes. Yes, Your Honor. What do you do with Lane? Your friends on the other side say they cite the Supreme Court case from 2014 that says sworn statements in criminal proceedings are the quintessential matters of public concern and that that sort of forecloses this whole question about whether the First Amendment protects the statements made in the affidavit by the police captain. And thank you, Your Honor. I think that's an excellent question and I appreciate the regular case. An affidavit that is submitted without the factual details that we have here might be a matter of public concern, but in this particular case, it is clearly a matter of private concern because of the relationship between the captain, Mr. Beville, and his friend, who he clearly admitted he filed because the man was his friend. So, you have to balance out, and there's a four-factor test in terms of balancing out which weighs more heavily, the governmental interest or the personal interest. And in this particular case, there's no doubt that it's a personal interest and the governmental interest. So, imagine trying to conduct business as a law enforcement officer, either the sheriff or the district court judge or the district attorney, and you have a captain of the largest police agency who's trying not just to interfere, but to influence the actions of the court and the news media and potential and prospective jurors by making these statements on behalf of his friend. So, I think the factual situation that exists here pretty clearly establishes that this was a matter of his personal concern and not a matter of public concern. So, all these people, I mean, what you said, is just odd. All these people are, quote, public people, you know, in a very small circle, yet you argue strenuously. It's permeated by quintessentially private matters. Interesting. I mean, I understand your argument, just sort of odd. Every person here is a public person by their occupation, so to speak, in a small municipality where I guess we could almost take judicial notice. Everybody knows everybody and everything about everything. It's not to say the law should be different if it was New York City, but still, you know, it's kind of there. So, I hear your argument. You know, it's just interesting. So, all that you just said, all that's in the record about all these relationships and so forth, or is that good advocacy? Well, hopefully it's both, Your Honor. I think that it is part of the record as well, the relationships, and I agree with you. It's very strange, and all I can say is, welcome to small-town East Texas. That's kind of the way it works, Your Honor. Well, I'm in Shreveport. I'm in Shreveport. I'm almost there, you know, six, ten miles from the line. My house, I shouldn't say that. Anyway, almost there. Got lots of Texas pickups over here. All right, Judge Davis has another question for you. Your argument would be the same if the plaintiff had been called as a witness and made the same testimony that he put in an affidavit. Does the affidavit make any difference here? I believe so, Your Honor, and here's the context that I see it in. If somebody is subpoenaed and they're forced to attend. Well, let's not say he's subpoenaed. The defendant says, I'd like for you to come testify for me, and Bevel says okay, and he gets on the stand, and he's got something to offer to the case. Well, Your Honor, I do believe it would be different. Mr. Bevel had nothing to offer to the case from a factual standpoint. He signed an affidavit, and the affidavit was filed for a preliminary matter, and I think it does make a difference. It's wholly voluntary on his part. This entire matter was created by him and for him, essentially, so I think the distinction there between live testimony and the affidavit involved in this case, I think there is a real distinction there. The distinction between a voluntary witness and a subpoenaed witness. I think that's a real distinction too, Judge Davis. I think that's one distinction, but I think there is another for David. Let's say that somebody is called as a witness. They're called as a witness. They're subject to cross-examination. Chances are they're not picking the news media outlets that are going to be there and cover it, so I really do see a distinction between filing this affidavit and being called as a witness, Your Honor, and most witnesses in criminal cases generally, they seem to be subpoenaed, so especially law enforcement. All right, Mr. Davis, I think I'm going to cut you off. I gave you a little Louisiana lanyard in terms of extra time to answer, but that's part of this exercise to help us clearly understand the arguments and so forth, so thank you for that. You've reserved some rebuttal time brief, so let's shift gears and get over to Ms. Rodenberg. Your Honor, you've been patiently waiting, so you're up. May it please the court. I'm Jody Rodenberg, and I'm here today with Laura Benitez Geisler representing the affiliate, Mr. Terry Bevel, who was the target of a vindictive campaign by his local elected officials after exercising its First Amendment rights. I will be addressing two issues. First, government officials are not entitled to fall when they act outside the scope of their discretionary authority, and second, the district court correctly determined that Bevel pled a claim for First Amendment retaliation. Ms. Geisler will address the appellant's misapplication of law on the law was clearly established at the time defeating qualified immunity. Turning to my counsel, I don't mean to interrupt, but I just want to make sure I know who wants to argue what I'm interested in understanding how Lane Garcetti Pickering, etc. applies to this to the affidavit that your client submitted. Is that your is that your province or is that your co councils? I believe it will be mine, Your Honor, and establishing that there was a valid First Amendment claim will primarily address that the law was clearly established and the law as it applies to conspiracy claims. Okay, great. Turning to my first issue of qualified immunity analysis is not warranted. Qualified immunity is an affirmative defense that requires two things. First, the official was acting in their official capacity, and second, they were acting within the on this affirmative defense. The court does not even need to perform a qualified immunity analysis. The rationale behind qualified immunity is to protect officials acting within the scope of their discretionary authority. It was not designed to protect unlawful acts outside the scope of an official's authority simply because they cloak themselves with their title. I'm sorry, isn't the whole theory of why they should be liable that they pressured the mayor? It is, Your Honor. And isn't the only thing they could use to pressure the mayor, their official power? Yes, Your Honor. And but that the power that they were, it was outside the scope of their authority to exercise that power. Anytime someone alleges that a state official acted unconstitutionally. I apologize, not necessarily, Your Honor. So, for example, in this case, we have alleged that the city equipment and the mayor both acted unconstitutionally, but we haven't alleged that they were acting outside their discretion. But we have a sitting district judge, a sheriff, and a sitting district attorney go to an entirely separate municipal entity, the city equipment, and say, if you don't fire Mr. Bevel, we're going to withdraw our resources from you. Those threats are outside the discretionary authority of a judge and of a county sheriff and a district attorney. Did the three defendants have the power to do what they said they were going to do? If if they had, they would have been abusing their their their office, Your Honor. I mean, it seems like you may have just conceded away the theory, because if I mean, if they didn't have the power to do what they threatened to do, then I don't understand how they could be liable for anything. If they would have done that, those acts would have been unlawful, Your Honor. That seems like a big problem for the theory of the case, doesn't it? No, Your Honor. It supports our theory on co-conspirator liability. It shows you fired to do something that they couldn't do. It would have been unlawful for them to do. They were going to withhold. They threatened to withhold the resources of their office to pressure a third party, the city equipment to fire its employee. They had no discretionary authority to make decisions over the city equipment, police departments, hiring practices. Had they ever done this before, where they had just they had withheld funds in punishment of some political purpose? That's not in the record, and I'm not sure, Your Honor. I mean, if your theory is that they couldn't have done it, then I don't see how they could have like they could have conspired to exercise powers that you say they didn't have. Could you rephrase your question a little differently, please? I'm answering it. No, no problem at all. I'm just I'm a little surprised by the by this line of argument, because it strikes me that either the three defendants had the ability to go in and threaten the mayor to do a thing withhold funds if the mayor didn't do what they wanted, which is one theory of how they conspired to violate the First Amendment rights of your client, or they didn't have the power to do that. And so they were just kind of blowing smoke, which is what I take your argument to be. And if the argument is that they conspired to blow smoke, I'm not sure I see how that's going to get you very far. It might get you around the first problem, but it doesn't get you around sort of winning the battle, but not winning the war. Okay. I think the best way for me to answer your question is to start with first white. This court doesn't even need to do a qualified immunity analysis. Qualified immunity is only appropriate when a defendant is acting within the scope of their discretional authority. So if this court finds, which they should, the Judge Fletcher, Sheriff Castileau and D.A. Wheeler did not have the discretionary authority to go to the city equipment, the analysis ends there. And we know that because of Cherry Knoll versus Jones, which is a decision out of this court. The burden starts with those parties to establish that the challenge conduct was within the scope of the discretionary authority of their office. If they're not able to do that, the analysis ends there. A qualified immunity analysis doesn't even need to be performed. And in this case, it's all the time. I'm sorry. Go ahead. The D.A. had authority to decide what cases from Whitman involved in the city he was going to prosecute. The judge had docket control over cases that he was assigned for the city. And the sheriff had decisions about, could make decisions about how many deputies he was going to send over to the city. I mean, why didn't they have authority in the area in which they put the pressure on? I think you need to go to your next argument. All right. If that's all right with that, I will turn to my second point. Should the court perform a qualified immunity analysis, the district court did correctly hold that Bevel's first amendment rights were violated. Only I take it lean is your best case on this, right? It is your honor. So here's I have two hangups on this one. I don't understand. Justice Sotomayor has this long, most of her explanation about why the testimony in that case is a testimony of a citizen on a matter of public concern. Is this enduring obligation of everyone who testifies in a criminal trial to tell the truth, combined with the fact that the subpoena. So in this case, obviously, you don't have a subpoena. It's completely voluntary. The second thing is that I'm looking at the material parts of the affidavit right now, and I don't see anything in here that's an assertion of fact. It's all an assertion of opinion. And the basis for the assertion of the opinion is my name is Terry Bevel. I am currently the equipment police department captain and the former jail administrator for Hopkins County. It's a plea to the authority of who this person is then saying, in my opinion, there's not going to be a fair trial here. We need a venue change. So I don't see how the sort of the either the facts, the law or the motivating analysis of Lane helps you establish a First Amendment violation. Well, in Lane versus Franks, the Supreme Court was clear speech relating to official misconduct and corruption are matters of significant public concern and should be given First Amendment protection. The fact that Mr. Bevel wasn't subject to a subpoena, it doesn't really affect this court's analysis. And in Kenny, the parties in that case also testified voluntarily. And that wasn't a basis for disrupting their First Amendment rights. Were they testifying as effectively opinion experts? They were expert witnesses. Yes, your honor. So they don't have the same obligation that motivates Lane, right? That is this truthful obligation to I'm sorry, the obligation to testify as true facts. I disagree, your honor. I think I think experts are under the same obligations as fact witnesses whenever they're testifying in trial. I'm sorry. I'm sorry. I mean, I didn't mean that they didn't have an obligation not to grant perjury. I just meant that there's a difference between saying I saw one person give drugs to another person versus in my expert opinion, you can't get a fair trial in this county. You see, you see the distinction I'm trying to explain. I do, your honor. And I see that my time has expired. May I answer your question? Oh, absolutely. That's why we're here. Go ahead. I think the distinction is that the source of that obligation, it comes from the same place. There's a duty to the court and to society at large for any witness who's called to trial, regardless of their purpose to tell the truth. And whether that's from a factual basis or from an expert opinion of a basis, that obligation doesn't change. And it doesn't affect whether or not a party's First Amendment rights were violated whenever they were terminated for giving that testimony. So in fairness on time, did you make all the points you were planning to make? I know we asked you some questions. So, I mean, were you left hanging or, you know, is there a point? The only other point I wanted to make, your honor, if the panel is interested in hearing it, is that the district court did correctly hold that Bevel's interest in commenting on a matter of public concern outweighed the city equipment's interest in this case. We know from Branton versus the city of Dallas that real, not imagined disruption is required and generalized concerns about harmony in the workplace or eliminating disruption, they're not sufficient. Real disruption is required. This court and Kinney reached the same conclusion. Disruption is always possible, but to give deference to an unfounded prediction of harm would allow the government to arbitrarily punish any speech under the guise of preempting disruption. If the court doesn't have it. All right, well, I'm, yeah, well, I'm not sure the way the argument is divided, who it goes to, so if it's not you, your colleague can answer it, but counsel opposite, at least one of them, I think Mr. Davis was, well, I mean, I hear you saying, you know, the court need not engage the qualified immunity analysis. I heard it, but assume an arguendo, at least on the other side, the arguments that the law was not clearly established. Oh, no, you said your counsel's arguing that, right? Yes, your honor. All right, sorry about that. All right, then my question for you is, you heard the other side going exactingly through the paragraphs of the complaint, et cetera, et cetera. Their advocacy is, he alleged this, he alleged that, but it doesn't show this, it doesn't show that, it doesn't show this, they've gone through it, you know, so on my purpose, at least, what's your retort on their focus on what the complaint says or doesn't say in terms of you staying in the court, if you could do it succinctly? All right, well, first, it's important to think about that there are two different claims alleged. First, it's the direct 1983 cause of action against the city of Quitman, which Wood County has alleged, or excuse me, Sheriff Castellano and DA Wheeler have alleged on this appeal as insufficient. Only two of those four elements are in dispute. First, whether he spoke as a private citizen on a matter of public concern, and second, whether he was commenting on a matter of public concern outweighed the city of Quitman's interest in this case. As we know from Lane v. Sims' testimony about corruption or significant matters of public concern, and the affidavit of Mr. Bevel is contained within the complaint, we know that Mr. Bevel was fired as a direct result of his affidavit testimony because his letter placing him on administrative leave was word for word in our complaint, as well as his termination memo, both of which clearly state he received retaliation for his affidavit testimony in this case. All right, the other sort of theme from both counsel is that the complaint is wanting in terms of establishing individual causation by the respective, you know, defendants, and then they went through the paragraphs in terms of saying what's what. So, you know, what's your response? They say, yes, they plead this, but they've got to establish individual causation, and they don't. So, just kind of always want to know what the other view is. So, what's your response? You know, they've taken your complaint and said, yes, it says this, but it doesn't establish the individual cause. I know it's conspiracy. So, any response to that before I let you go? Yes, your honor. My response would be that Latiolos v. Cravens directly rejects that argument, and that's a 2012 opinion out of this court. That case states that a conspiracy under 1983 is the legal mechanism through which to impose liability on all of the defendants without regard to who committed a particular act. This case rejected the arguments that were made primarily in Judge Fletcher's brief. And Ms. Geisler will fully address that issue as well. All right. Appreciate it. Just want to make sure. Thank you, your honor. All right, Ms. Geisler, you're the anchor person. Good morning. Morning. Yes, ma'am, press ahead. Go ahead. Yes, sir. Here we have a district court judge, district attorney, and sheriff all claiming that they could not know that their conduct was unlawful. They claim that they should be granted qualified immunity because it was not reasonably clear in July of 2017 that it's unlawful to retaliate against a witness by going to the witness's employer with threats to retaliate against the employer unless the witness whose testimony he didn't like was fixed. But here, that exact conduct was what was addressed by this court in Kennebee Weaver. Sixteen years ago, it condemned it. The court was unequivocal in stating that it was so sufficiently clear that this type of conduct was illegal that it would be unreasonable for a state actor not to recognize that the First Amendment forbids it. The appellant's attempt to recast their roles as non-final decision makers is clever, but it's wrong. And that's because here, the claims against the appellants, they're co-conspirators. They are not non-final decision makers in a direct 1983 cause of action for First Amendment retaliation. And because so much of their argument is based on the conflated applicable standards of law between a direct 1983 cause of action versus one for conspiracy, I would like to address that matter first. Mr. Bevel has alleged two separate and distinct causes of action arising from his termination. The first is a 1983 cause of action for First Amendment retaliation against his employer, the city of Whitman, and the individual First Amendment retaliation claim against Mayor David Dobbs, who had the final decision-making authority over Bevel's terminations. These are the two defendants that are the state actors directly responsible for the act, the constitutional violation that gives rise to the 1983 violation. And neither of these two defendants have challenged the adequacy of Bevel's complaint. The second cause of action is one for conspiracy pursuant to 1983, and that's the one that's filed against the appellants along with their co-conspirators, the city and the mayor. And although it's a separate and distinct cause of action, a claim for 1983 conspiracy is not actionable without a state act 1983 violation, which in this case is the actual termination of Ms. Rodenberg just said. Conspiracy, the law is well-established through Hale versus Hamlin, which was also followed by the other case, but conspiracy is the legal mechanism through which liability can be imposed on all members of a conspiracy without regard to who among the co-conspirators commits the particular act that violates 1983. And that's where their application of different standards and this requirement of individual causation for each individual defendant is wrong because the claim against them is not a direct 1983 violation. It is for their role as co-conspirators with the final decision maker who had the authority and actually committed the unconstitutional act of terminating him over his affidavit testimony. And in order to establish our cause of action against these appellants under the conspiracy theory, which has been led against them, all we had to do is show the existence of a conspiracy involving a state act violation pursuant to 1983 and a deprivation of rights and furtherance of that conspiracy by a party to that conspiracy. So even when defendants are entitled to assert qualified immunity, they can still be personally liable for conspiracy pursuant to 1983 when the state action alleged to have violated is objectively unreasonable in light of the clearly established law. And that's a proposition that's been set forth by, no, I'll get this wrong, Van Steele versus City of Marion. Can you read to me the sentence in the complaint where the defendants agreed? There are, well, what's required is that we are, we state sufficient facts to... I didn't even see a conclusory assertion. So obviously I think you're right. You do need to Yes, I have all the record sites and the... In my former life, I used to go to meetings, but that doesn't mean that we necessarily agreed about what we were doing when we either went into the meeting or in the meeting. So I'm just curious how we know about the agreement that forms the backbone of the conspiracy theory. So at this stage, the only requirement that we need to meet, the conspiracy claims need to meet a probability or depleting stage that simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement. And that's from Twombly, the United States Supreme Court precedent. And then the facts when placed in the context of the entire complaint just must raise a suggestion of proceeding agreement. And that's what we have here. The record, the first and most direct point in the complaint where the agreement is alleged is in paragraph 61, which is on page 280 of the record. The defendants agreed and conspired to retaliate against Favell for his exercise of his first amendment rights by having Favell terminated. That certainly uses the word agreement. But obviously the complaint in Twombly and the complaint in Iqbal talked all about agreements. I mean, especially the one in Twombly. And the Supreme Court said simply saying agreement, just like in Iqbal, simply saying conspiracy isn't enough. You have to do something more. And so I guess my question is, what's the something more? I agree. So in the record at 266, paragraph 21, there's plausible facts to infer a retaliatory motive. So we've got Kaslu expressing to Favell to his anger and frustration about the crimes that McGee had proposed. We've got facts to infer an agreement to conspire and in furtherance the conspiracy. After the motion to transfer venue was, and I'm sorry, Your Honor, this is in the record at 271, paragraphs 32 and 34. After the motion to transfer venue was filed, Kaslu, Wheeler, and Fletcher approached Dobbs to suggest, to discuss Favell's affidavit and Favell's continued employment with the Quitman PD. Kaslu, Fletcher, and Wheeler threatened to retaliate against the City of Quitman by withholding Wood County resources and support for the Quitman PD if Favell was not fired in retaliation for the affidavit. Quitman officials, including Dobbs, discussed Favell's termination with Chief Cole, who objected to his termination and requested to handle the matter internally. Mayor Dobbs instructed Cole he had no choice but to fire Favell and passed along Kaslu, Wheeler, and Fletcher's threats to withhold resources from the citizens of Quitman and the police department if he wasn't fired. In the record at page 280 and 281, paragraphs 63 through 65, after the affidavit is signed, Kaslu, Wheeler, and Fletcher approach Dobbs and instruct the City and Dobbs to fire Favell because the statements in the affidavit. Kaslu, Wheeler, and Fletcher threatened to retaliate against the City and residents by withholding resources. Dobbs agreed to fire Favell and discussed his termination with Chief Cole, who resisted. Is it your position that the defendants had the power to do the things that you allege they threatened or was that they had power to do that? I don't know if they had the power to do it. The fact that they just made the threat consistent with what the, that the threats to retaliate against an employer in retaliation for his speech is the actual issue. So you don't actually have to establish that they could have retaliated? Right, no. The fact that you just said it. The fact that they used, that they went and conspired to have him fired by making these threats and exerting enough pressure on the he's the only final decision maker to have the authority to terminate Favell. That's their participation in furtherance the conspiracy, their threats, their pressure. I'm so sorry. I didn't mean to cut off your set of. So I hope that answers your question. Oh yeah, I just want to kneel down because I'm curious if you agree with your co-counsel that in fact the defendants could not do what they threatened to do. I understand your argument that it doesn't matter. I'm just curious as a matter of fact and law, do you think the defendants could have done the retaliation? It's outside the scope of their discretionary authority to threaten someone and threaten a witness and threaten their employer, a threat to retaliate, retaliate against their employer. I mean, that's well without this, without, not within the scope of their administrative duties. And that's what the scope of authority is. It's the discretionary authority within the It's not intended to give public officials, CARP wants to do whatever they want under cloaks just with their title alone, which is what happened here. I certainly understand the argument that it was unlawful regardless. I'm just, I take it that the answers no, that they couldn't have done it. They couldn't have done the thing they threatened to do, but I certainly understand your argument that it doesn't matter. And I understand your argument that it was unlawful either way. Right. Well, they actually, they could not, I mean, I guess that the threats that they would just withhold support. I don't know what that means indirectly or directly. I mean, there's at this stage, we don't have any discovery and our burden at this stage is just simply to call, identify enough facts to raise a reasonable expectation that discovery will reveal evidence of an illegal agreement. And that's our burden at this stage. And we've more than met it with, with, I haven't even finished going through the other facts in the record, but I'll just point you to page 276 of the record, paragraphs 42 through 43 and 46 at the record, 276 to 278 paragraphs, 46 through 51. And in the context, there's a lot of facts fled about after his termination and, you know, having judge Fletcher sign an arrest warrant and open court, declare him to be a liar and reprehensible all of that after the fact, Steph, while he may be judicially immune for it in the context of the entire pleading and the entire complaint, it's sufficient evidence to raise a reasonable expectation. The discovery will reveal the evidence of an illegal agreement. And that's our burden at this point. You don't have to, you, you have to let, you don't have to land an agreement. What, what we did your honor in paragraph 61, we did allege they agreed and conspired to retaliate. Yeah. But is that the only place, is that the only place you allege that they agreed? With the word agreement that I think it's maybe in another one other spot, but it's essentially the same language. And again, in the full context of the entire complaint, we've more than met our burden. The cases that they cite for, to support their, their inadequacy at the pleadings in a conspiracy case, that's where it's just either, I mean, just a bare naked one line, you know, the defendants agreed or something along those lines. We have a lot of factual content to support an inference that there was an illegal agreement. So are you addressing the clearly established or not line of arguments from Mr. Stone and Mr. Davis? I am your honor. All right, go for it. So even assuming that the defendants are entitled to qualified immunity, they still cannot establish that the law was clearly, was unsettled in July of 2017 because Sims is not applicable to this case. Kenny B. Weaver is the applicable and binding authority. It's factually similar in almost every way and very dissimilar. The facts in this case are very dissimilar to Sims versus Weaver. Sims versus Weaver sought to clarify the uncertainty in the law related to first amendment retaliation claims in the employer employee context. It's very apparent from the court's language and discussion and discussing and describing the development of case law and that led to the confusion in this area. But it goes back to the, to the more important in my, my prior point is that in this case, they are alleged to be co-conspirators with the final decision maker and their participation in the conspiracy with the final decision maker who, who did the unconstitutional act that gave rise to the 1983 positive action is what makes them liable. Doesn't matter if they committed the actual act. So it's very factually distinguishable from Sims versus Madisonville because there, those cases involve subordinate employees or coworkers with a, with a, you know, with an animus or retaliatory animus. And that's not the case here. And the language in Sims is very clear in describing the history of uncertainty of the cases. They're all in the individual, they're all in the employment context. And, and, and the court goes and describes the confusion came from courts mischaracterizing the causation standard for a non-decision maker employee under a cat's paw theory of liability of imputed liability, which typically arises in a title seven case where only employers can be liable and not individual employees. Sims describes Let me ask you a question, hopefully my final one. One of them, I can't remember now, Mr. Stone or Mr. Davis, at least poised and piqued my interest that the statements of Mr. Bevel or Sheriff Bevel or whoever were made, I think he said, quote unquote, on behalf of his best friend, yada, yada, yada, yada, yada. I mean, sort of poising it that, you know, this was really personal in the way of the statements made, et cetera. And I sort of said, hmm, curious, you know, everybody here's a public person, but you know, their argument was that this was personally driven because it's his best friend, et cetera, et cetera, and all of that. And so thus, you know, not speaking, you know, on a matter of public concern, but speaking personally, notwithstanding the uniform or other vestments that might suggest some public nature of it. And so now that's my characterization, not theirs. So just succinctly, you know, your response, I mean, when I ask you to cite the cases, I'm just saying your response to their argument about that. Well, he spoke on a matter of public concern. He previously run into the sheriff who indicated that he wanted McGee put under the jail and wanted to go away for a long time. When Mr. McGee was initially indicted, he was, his pretrial was set maybe within a week or two after he was arrested. And then the trial was set for like three weeks afterwards. It was very expedited. He also knew because of the relationship that was well-known within the county that the sheriff, the DA, and the judge all were very, very tight. And he had concerns as a peace officer, someone who swore to uphold and defend the constitution, that this man was not going to have a right to a fair trial. And speaking on official misconduct is a protected right. So the language tracked, the language in the code of criminal procedure that talks about individuals' influence, having an improper influence over a trial, that's a basis for a change of venue. And in this case, it was Judge Fletcher who denied the change of venue. He was, he was the one who was mentioned. All right. So do I take your long answer, though I asked for a succinct one, do I take your long answer to be you're saying, no, it wasn't just personal because they were friends, you're saying it was public. Is that, is that what I draw from what you responded? Well, the personal motivation does not change the public nature of the speech. All right. All right. I'm just trying to make sure I understand what everybody's saying while I got you locked in, in the tape. All right, go ahead. Your friend on the other side said that these local, in Kenny, these local police departments, I guess the head of the police department were members of the board of Kilgore College. So everybody who conspired in that case were decision makers. And Kenny doesn't stand for the proposition that, that someone outside the circle of the decision maker and conspired to retaliate because plaintiff made public speech. What do you say to that? They were not the final policy makers over the employment. They had discretion over sending their police officers. And that was what the court focused on. They could use their ability as public officials to withhold and retaliate by not sending their, their officers there for training effectively, kind of constructively terminating the position of the, of the, of the instructors. But that the case was not framed that they were on the board and that gave them the final decision making authority. That was not the way, how the case was framed. And, and the issue and what the court focused on in Kenny was the fact that the government does not have the right to parry a witness's employer to fire them because of speech that they don't like. And that's exactly what happened here. And another point, if I may, your honors, with respect to the SIMS applicability, SIMS goes through great detail to distinguish and explain the confusion, the law that the body of case law that led to the confusion regarding non-final decision, non-final decision makers and first amendment retaliation cases. Kenny v. Cooper is not cited once because it's not All right. Thank you, Ms. Cusum. I'll stop you right there. All right. Appreciate your initial argument and your responsiveness to counsel. All right, Mr. Stone, we back to you. I will not be as flexible about the time on rebuttal as I have been otherwise. So you are seasoned and can stay within it. So you left yourself two minutes. So go for it. Thank you, Your Honor. Let me just make a couple of quick points then so as to not violate that immediate instruction. Judge Oldham, you pointed out that my friends on the other side have painted themselves into a corner. They try and tell this court for purposes of qualified immunity that Judge Fletcher was unable or wasn't within his discretionary authority to make any threat that could have possibly coerced Mayor Dobbs. And then they say for purposes of liability to avoid a 12 B six dismissal. But of course, Judge Fletcher threatened Mayor Dobbs. Both are in. Both can't be right. Either one is fatal. So moving right along to your question, Judge Stewart, you specifically asked my friends on the other side what they would say in response to my argument that they hadn't stated anything about an agreement hadn't stated anything about individual causation. They gave you nothing. That's because there's nothing here to give. As they say in pure legal assertion that the three got together, agreed and conspired. Now this court's cases like Jabari and Montgomery actually come out or Jabari and Morrow come out and state the kinds of things this court wants when someone as as actual plausible facts regarding a conspiracy, the dates and times of secret meetings, where individuals got together, what was said, these sorts of things. Obviously, it's a case by case situational analysis. These are the kinds of that push you towards plausibility. None of them are in this complaint and pointing to and she OK, let me stop you there and I take your point. You're on a roll. But I mean, she says, OK, yeah, but we're at the pleading stage. You know, how are we going to be able to allege all that? You know, we haven't had any discovery. You know, our burden is to, you know, give as much detail. We got a I don't know how many paragraphs. It's not a four page four paragraph complaint. They say, geez, you know, we got all these paragraphs of alleged style. We can allege your argument. In fact, you know, we've got to plead what we would have pled, you know, if we we discovered. I mean, I think I know what your argument is going to be, but I'm just stopping you at that point since you're saying, well, I got to plead all these grimy details. And they said, hold them up. We haven't gotten to that. So go forth. Well, your honor, that's exactly the argument that was made in Iqbal and Twombly, exactly the argument made in Jabarian and Morrow. And for that matter, they don't have to plead all the proverbial grimy details, but they do have to pervert. Actually, they do have to plead some of the grimy details of an agreement and not merely of the alleged Section 1983 violation. I see my time's expired and I wouldn't want to trench on your patience, your honor. Well, you won't. But I stopped you at a minute 40. And so, you know, it's Friday and all that. So I took up your last few. So in the interest of fair play, I'm going to give you a concluding sentence, a declarative statement, no semicolons, no clauses. If my friends on the other side are right about Kenny Culbertson versus Likos is wrong because Culbertson had the exact same third party situational firing as that we see in Kenny. This court is careful when it declares what clearly established law is. It should take Sims at its word. And commas, no semicolons right on. Rarely do I get it done that way, but you're good. All right, Mr. Davis, take your cue. Thank you, your honor. I would just like to point out again, and I probably shouldn't have to, but this is a plane of second chance to amend their complaint. This is our second motion to dismiss that we're here on today. They have a heightened pleading standard and a heightened pleading requirement. Once we bring up the issue of qualified immunity, the burden is on the plaintiff. The burden shifts and goes to the plaintiff to demonstrate the inapplicability of the defense. And I would point out that in this particular case, your honor, there is not an allegation at all period in their complaint anywhere that there was an agreement between the three defendants and anyone at the city equipment. And there would have to be an agreement to engage in this conduct to terminate this individual if there were going to be a conspiracy. Well, how are you going to know those details if they don't ask nobody, Mr. Davis? Well, your honor, the plaintiffs, all they have to do is make the allegation. They didn't even make the allegation. If they don't have enough facts and evidence to come up with that allegation, then they shouldn't be filing their lawsuit. I mean, they've got to have the evidence or at least be able to make the allegation. And I would point out that the plaintiff was talking about final authority. And I would point to Kenny versus Weaver on page 242 through 243. The seven law enforcement, this is a quotation, the seven law enforcement officials collectively, the police officials asserting qualified immunity in this case, are police chiefs or sheriffs who possess final authority over the training of the officers employed by their respective agencies. That was the final authority that was addressed in Kenny v. Weaver. It does address final authority. And that's why it's so important under the clearly established law, Kenny v. Weaver didn't get him there. It didn't happen until Sims. And Sims was after the factual occurrences in this case. Your honor, I would also just very briefly like to point out that I think that they're under the, whether or not the statements that were made caused any disruption and were a matter of public concern or whether the statements were more matters that would be of concern to the governmental entities. And I believe the plaintiff stated that there has been no disruption caused as a result of the statements made by her client. I think there's been a great deal of disruption caused by the statements made by her client in his affidavit. I'm going to put a period there. I'll give you the same declarative sentence. Thank you, your honor. In this case, there is no clearly established law and the pleadings are insufficient to state a cause of action. All right. Thank you, sir. All right. Counsel, on both sides, we appreciate your briefing and your arguments and especially responsiveness to the questions that the court has. The qualified immunity cases always begin a lot of questions. And so you've helped us. We will consider the cases that we've had this week. We'll get it decided as soon as we can. With that, you're excused with the thanks to the court. Appreciate your being here. Stay safe. Have a happy holiday.